UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-22359-ALTMAN/Sanchez

**NATALIE ORTIZ**,

 *Plaintiff*,

v.

**TARGET CORPORATION**,

 *Defendant*.

_____/

## ORDER

On December 29, 2021, Natalie Ortiz, our Plaintiff, "tripped and fell" while shopping at a Target store located at 20500 SW 112th Avenue, Miami, Florida. *See* Complaint [ECF No. 1-2] ¶¶ 4–5. Ortiz sued Target in Florida state court on December 26, 2023, alleging one count of negligence. *Id.* ¶¶ 6–9. While the parties were engaged in discovery, Target received an interrogatory answer, stating that the Plaintiff had "incurred medical bills for the treatment of [her] injuries which total approximately $90,000.00." Notice of Removal [ECF No. 1] ¶ 29 (quoting Plaintiff's Interrogatory Answers ("Pl.'s ROG Ans.") [ECF No. 1-1] at No. 11). So, on June 18, 2024, Target removed this case to federal court under our diversity jurisdiction. *See id.* ¶¶ 5–31.

Ortiz has since filed a Motion to Remand (the "Motion") [ECF No. 4], arguing that Target has failed to satisfy the amount-in-controversy requirement, *see id.* at 1–2. Upon careful review of the Motion, the record, and the governing law, we now **DENY** the Defendant's Motion to Remand.

### THE LAW

Federal courts are courts of limited subject-matter jurisdiction. *See Capron v. Van Noorden*, 6 U.S. (2 Cranch) 126, 127 (1804). A federal court, therefore, must remand to state court any case that has been improperly removed. *See* 28 U.S.C. § 1447(c). The party attempting to invoke the federal

court's jurisdiction bears the burden of establishing that jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc.*, 298 U.S. 178, 189 (1936). "Not only does the language of the Act of 1887 evidence the Congressional purpose to restrict the jurisdiction of the federal courts on removal, but the policy of the successive acts of Congress regulating the jurisdiction of federal courts is one calling for the strict construction of such legislation." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941). Indeed, "[d]ue regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Healy v. Ratta*, 292 U.S. 263, 270 (1934).

Congress has authorized the federal district courts to exercise original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" 28 U.S.C. § 1332(a). This type of jurisdiction (what we call diversity jurisdiction) requires *complete* diversity: Every plaintiff must be diverse from every defendant. *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citing *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1355 (11th Cir. 1996)). The party invoking diversity jurisdiction must establish that the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). "A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010).

If the initial pleading does not state a specific amount of damages, federal "jurisdiction [can] be established by 'an amended pleading, motion, order, or other paper.'" *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1212 n.62 (11th Cir. 2007) (quoting 28 U.S.C. § 1446(b)). In evaluating whether the "particular factual circumstances of a case give rise to removal jurisdiction, we strictly construe the right to remove and apply a general presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Scimone v. Carnival*

2

*Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) (cleaned up); *see also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) ("[W]here plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.").

**ANALYSIS**

Because "Target's claims of diversity of citizenship [are] not being disputed," Mot. at 2, only the amount-in-controversy requirement is at issue here. Target offers three exhibits to prove that the value of Ortiz's claim exceeds $75,000.

*First*, Target directs us to the Plaintiff's answer to Interrogatory No. 11, in which she said that, "[a]s a result of the subject incident, [she] incurred medical bills for the treatment of [her] injuries which total approximately $90,000.00." Pl.'s ROG Ans. at No. 11. The Eleventh Circuit has recognized that "interrogatory responses" *can* constitute the kinds of "other paper" that are acceptable for establishing jurisdiction, *Lowery*, 483 F.3d at 1212 n.62 (citing *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1036 (10th Cir. 1998)), so long as the responses do not amount to "the parties' stipulation or the equivalent (and especially not a party's mere admission)" to the general amount of damages, *Eckert v. Sears, Roebuck & Co.*, 2013 WL 5673511, at *1 (M.D Fla. Oct. 17, 2013) (Merryday, J.) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592–94 (2013)); *cf. MacDonald v. Circle K Stores, Inc.*, 2009 WL 113377, at *3 (M.D. Fla. Nov. 12, 2008) (Baker, Mag. J.) (finding that the plaintiff's denial in interrogatories "that damages did not exceed $75,000 . . . is insufficient to confer subject matter jurisdiction on the Court"), *report and recommendation adopted*, 2009 WL 113377 (M.D. Fla. Jan. 16, 2009) (Conway, J.). Ortiz's "interrogatory responses regarding the amount of [her] . . . medical bills" thus provide "appropriate" evidence "to establish [that] the jurisdictional amount" exceeds $75,000. *Sibilia v. Makita Corp.*, 674 F. Supp. 2d 1290, 1293 n.4 (M.D. Fla. 2009) (Moody, J.) (collecting cases); *see also Del Rio v. Scottsdale Ins. Co.*, 2005 WL 3093434, at *2 (M.D. Fla. Nov. 18, 2005) (Fawsett, C.J.) (finding

that "the amount in controversy exceed[ed] the requisite amount for federal diversity jurisdiction" where an interrogatory answer "contain[ed] an itemized list of damages totaling over $75,000").

Target further supports this answer by submitting Ortiz's medical bills. As its *second* exhibit, Target introduces Ortiz's Medical Ledger [ECF No. 4-1], which summarizes most—but not all—of Ortiz's medical expenses from the incident. The Medical Ledger notes that the "Total Billed" amount is $70,883.58, the "Total Paid" amount is $5,435.13, and the "Remaining Balance" is (also) $5,435.13. *Id.* at 1. Target's *third* exhibit is a collection of Ortiz's physical-therapy bills, *see* Phys. Therapy Bills [ECF No. 13-1], which the parties agree reflect *at least* $20,702.59 that "was billed for [physical therapy] services rendered after the subject incident," Reply [ECF No. 14] at 2; *see also* Resp. [ECF No. 13] at 7 (arguing that the total is actually $28,870.59). Put together, the total amount billed from the Medical Ledger and Physical Therapy Bills is $91,586.17, which exceeds the jurisdictional threshold.

Resisting this conclusion, Ortiz argues that, because the "medical lien for treatment is $5,435.13" and her "physical therapy was also paid by her insurance," her "damages should not be calculated by her medical bills," since these "do[ ] not reflect the true amount in controversy." Reply at 2. Ortiz's counsel also told us at our September 3, 2024, hearing that the sticker prices on the medical bills don't reflect adjustments by the provider. *See* Paperless Minute Entry [ECF No. 18]; *see also, e.g.*, Phys. Therapy Bills at 35 (billing for "PT Eval Low Complexity" a "Charge" of $317.40 and "Adjustments" of $317.40).

District courts in the Eleventh Circuit are split on whether, in evaluating their diversity jurisdiction, we should consider offsets and adjustments that were made *prior to* removal. *See Feria v. Suntrust Banks, Inc.*, 2012 WL 1029506, at *2–3 (S.D. Fla. Mar. 26, 2012) (Seitz, J.) (collecting cases). We think the better answer is that they should *not* be considered. In saying so, we find persuasive Judge Covington's opinion in *Stramiello v. Petsmart, Inc.*, 2010 WL 2136550 (M.D. Fla. May 26, 2010). The plaintiffs there had already been reimbursed $85,904.97 out of $108,351.92 in medical bills.

4

Because "Florida Statute Section 768.76 precludes a plaintiff from recovering medical expenses related to an incident for which they have already been paid through a collateral source," the plaintiffs argued that "a [future] set off . . . effectively reduces the amount in controversy at the outset of the litigation." *Id.* at *4. The court rejected that argument, reasoning "that subject matter jurisdiction is not defeated simply because the parties might anticipate a future reduction in recoverable damages." *Ibid.* And, because Florida's collateral-source rule kicks in only *after* "liability is admitted or is determined by the trier of fact and . . . damages are awarded to compensate the claimant for losses sustained," FLA. STAT. § 768.76(1), the amount in controversy remained the full "$108,351.92 in medical expenses (regardless of a future set off)," *Stramiello*, 2010 WL 2136550, at *4.

Similarly, in *Henry v. K-Mart Corp.*, the court found that the jurisdictional minimum was satisfied where the plaintiff's "total medical bills [equaled] $78,856.64," even though "the balance owed to the medical providers [was] only $15,472 after payments and adjustments for health insurance." 2010 WL 5113558, at *3 (M.D. Fla. Dec. 9, 2010) (Covington, J.) (cleaned up). Relying on *Stramiello*, the *Henry* Court refused to reduce the value of the plaintiff's claim by any adjustments, concluding that adjustments "did not defeat amount in controversy for removal[.]" *Id.* at *4 (citing *Stramiello*, 2010 WL 2136550, at *4). Other courts in our Circuit have similarly used a "[p]laintiff's medical bills, before any adjustments," as evidence of the amount in controversy "at the time of removal." *Lubinskas v. Amica Mut. Ins. Co.*, 2016 WL 8740488, at *2 (M.D. Fla. Dec. 19, 2016) (Irick, Mag. J.), *report and recommendation adopted*, 2017 WL 1409817 (M.D. Fla. Apr. 20, 2017) (Mendoza, J.); *see also Hughley v. Lowe's Home Ctrs., LLC*, 2021 WL 5903301, at *2 (S.D. Fla. Dec. 14, 2021) (Scola, J.) (rejecting arguments that "medical records . . . showing a total of $155,450.09 in charges" were insufficient to establish jurisdiction where, "after adjustments by Medicare, [the plaintiff's] medical bills really only total about $46,617.40" (cleaned up)).

The competing view—that setoffs and adjustments *should* be considered in determining the amount in controversy—appears to trace back to the Middle District of Florida's 2014 ruling in *Jackson v. St. Jude Medical Neuromodulation Division*, 62 F. Supp. 3d 1343 (M.D. Fla. 2014) (Chappell, J.). *See Walsh v. Target Corp.*, 2020 WL 5634125, at *4 (M.D. Fla. Aug. 27, 2020) (Kidd, Mag. J.) ("Following *Jackson*, several courts within the Eleventh Circuit have recognized and relied upon the case when calculating the amount in controversy." (first citing *Mavromatis v. Geovera Specialty Ins. Co.*, 2019 WL 3543707, at *2 (M.D. Fla. Aug. 5, 2019) (Barber, J.); then citing *Dickerson v. Barancik*, 2018 WL 11176792, at *4 (M.D. Fla. Dec. 6, 2018) (Honeywell, J.); and then citing *Armbrister v. Cumberland Farms, Inc.*, 2017 WL 7794284, at *2 (S.D. Fla. July 24, 2017) (Rosenberg, J.))).

Distinguishing *Stramiello*, the court in *Jackson* found that it *could* consider an insurance company's pre-removal payments to determine the amount in controversy because the plaintiff was *directly* suing the insurance company for breach of contract. *See Jackson*, 62 F. Supp. 3d at 1347 ("Defendant Allstate has already paid a portion of Plaintiff's medical expenses, and thus the value of Plaintiff's breach of contract claim shall be limited to the damages Defendant Allstate has failed to pay." (cleaned up)). So, the only amount in controversy there was about $10,000 in outstanding contract payments, since *Jackson* didn't "present a situation in which a future set off is at issue under § 768.76." *Ibid.* But that's just not our case.

Here, Ortiz has sued Target, the alleged tortfeasor, not her insurance company—making the facts of our case identical to *Stramiello*'s. And we won't extend *Jackson* beyond the context of direct suits against an insurer. The Eleventh Circuit has made clear, however, that "[t]he amount in controversy is not proof of the amount the plaintiff will recover," but rather "an estimate of the amount that will be put at issue in the course of the litigation." *Pretka*, 608 F.3d at 751. Accordingly, "courts in our Circuit have consistently held that 'any set-off to which [a] [d]efendant may be entitled is irrelevant at the jurisdictional stage,'" *Tabraue v. Scottsdale Ins. Co.*, 2024 WL 1249965, at *3 (S.D. Fla.

6

Mar. 25, 2024) (Altman, J.) (first quoting *Black v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 4340281, at *2 (S.D. Fla. Oct. 22, 2010) (Cohn, J.); then citing *Stramiello*, 2010 WL 2136550, at *4; and then citing *Zambrano v. Wal-Mart Stores E., LP*, 2023 WL 7189466, at *1 (M.D. Fla. Nov. 1, 2023) (Chappell, J.)), since the amount in controversy must be determined "*without* reducing that amount by the value of any defenses, reductions, or counterarguments the defendant might deploy in opposition," *ibid.* (emphasis added). That's especially true where, as here, there's no reason to believe the plaintiff "is wholly foreclosed from seeking recovery for the remainder of her medical expenses." *Hughley*, 2021 WL 5903301, at *2; *see also* Resp. at 13 ("[W]hile a plaintiff's 'refusal to stipulate [to] the actual amount of damages at the time of removal does not, standing alone, support jurisdiction[,] . . . a plaintiff's refusal to stipulate or admit damages below the jurisdictional amount should be considered when assessing the amount in controversy.'" (quoting *Ministerio Evangelistico Int'l v. United Specialty Ins. Co.*, 2017 WL 1187894, at *1 (S.D. Fla. Mar. 30, 2017) (Moreno, J.))).

So, while Ortiz's damages might ultimately need to be reduced to account for collateral-source payments (or adjustments), we needn't look "past the settled principle that a plaintiff cannot defeat subject matter jurisdiction by . . . expecting a future reduction in recoverable damages." *Zambrano*, 2023 WL 7189466, at *1. Target has shown by a preponderance of the evidence that Ortiz was entitled to seek at least $91,586.17 at the time of removal,[1] which "is what is in controversy in the case[.]"

---

[1] We say "at least" because Ortiz is *also* seeking damages for "pain and suffering," "loss of capacity for the enjoyment of life," "loss of ability to earn money in the future," and losses she "will continue to suffer . . . in the future." Compl. ¶ 9. Our "judicial experience and common sense" thus suggests that the amount in controversy is greater than the sum of Ortiz's medical bills. *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061–62 (11th Cir. 2010); *see also Poltar v. LM Gen. Ins. Co.*, 473 F. Supp. 3d 1341, 1345–46 (M.D. Fla. 2020) (Mendoza, J.) ("In addition to compensation for their medical bills, Plaintiffs are seeking non-economic damages for: pain and suffering due to the allegedly permanent injuries, mental anguish, and the loss of the capacity for the enjoyment of life. . . . The Court may consider these non-economic damages in calculating the amount in controversy." (citing *Wineberger v. Racetrac Petroleum, Inc.*, 672 F. App'x 914, 917–18 (11th Cir. 2016))).

*Pretka*, 608 F.3d at 751 (emphasis omitted). Because Target has met its burden of establishing our diversity jurisdiction, the Plaintiff's Motion to Remand [ECF No. 4] is **DENIED**.

\* \* \*

**DONE AND ORDERED** in the Southern District of Florida on September 11, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record